IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARY McNABB, as Executrix of the           )
Estate of Betty H. Alvis,                  )
                                           )
                   Plaintiff,              )        Case No. 01-1583-KI
                                           )
         vs.                               )        OPINION AND ORDER
                                           )
GLAXOSMITHKLINE, individually and          )
as successor in interest to SMITHKLINE     )
BEECHAM CORPORATION, a subsidiary          )
of SMITHKLINE BEECHAM HOLDINGS             )
CORPORATION, NOVARTIS AG,                  )
NOVARTIS CORPORATION,                      )
NOVARTIS CONSUMER HEALTH,                  )
INC.; and NOVARTIS                         )
PHARMACEUTICALS CORPORATION,               )
PFIZER, INC., a subsidiary of WARNER-      )
LAMBERT, individually and as successor     )
in interest to PARKE-DAVIS, INC.,          )
                                           )
                   Defendants.             )

Page 1 - OPINION AND ORDER

Mary McNabb
Executrix for the Estate of Betty Alvis
2016 Sand Street
Kingsport, Tennessee  37660

      Pro Se Plaintiff

Bruce C. Hamlin
Lane Powell P.C.
601 S. W. Second Avenue, Suite 2100
Portland, Oregon  97204-3158

Glenn J. Pogust
Kaye Scholer LLP
425 Park Avenue
New York, New York  10022-3598

      Attorneys for Defendant Novartis Consumer Health, Inc.

KING, Judge:

Betty Alvis brought a products liability suit against Novartis Consumer Health, Inc.

("Novartis"), related entities, and other pharmaceutical companies in October 2001.  Novartis

claims that it has entered into a valid settlement agreement with Alvis's estate and its executrix,

Mary McNabb.  Before the court is Novartis's Motion to Enforce Settlement Agreement (#26).

For the following reasons, I defer ruling on the motion pending an evidentiary hearing on the

validity of the settlement agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

Alvis's products liability suit was transferred from this court into multidistrict litigation

in the United States District Court for the Western District of Washington in January 2002, and

was remanded to this court in January 2006.  On March 15, 2006, I granted the motion of

attorney Thomas Powers of Williams Love O'Leary Craine & Powers, PC, of Portland, Oregon,

Page 2 - OPINION AND ORDER

to withdraw as counsel to McNabb and the Alvis estate.  On April 13, 2006, McNabb, *pro se*,

filed a Motion for Change of Venue to the United States District Court for the Eastern District of

Tennessee.  McNabb resides in that district.  Novartis asked the court to stay consideration of

McNabb's motion and filed a Motion to Enforce Settlement Agreement on April 28, 2006.

     Glenn Pogust, an attorney for Kaye Scholer LLP, national counsel for Novartis, filed a

Declaration under seal in support of Novartis's motion.  The Declaration of Glenn Pogust

("Declaration") includes a confidential Release, Indemnification and Non-Disclosure Agreement

("Settlement Agreement"), along with evidence of his conversations and email exchanges with

Powers, who represented McNabb and the Alvis estate prior to his withdrawal in March 2006.

As an initial matter, I unseal the Declaration and will quote relevant portions in this opinion.

     Pogust describes in his Declaration that he began discussions with Powers about settling

McNabb's claims against all Novartis entities in July 2005.  Pogust declares that he advised

Powers that he needed confirmation from him that his client would accept $7,500 in settlement.

On July 25, 2005, Powers sent Pogust an e-mail which read:

> Glen,
> I left a v.m. at your office number re confirming my authority to settle this claim as to
> Novartis for $7500.  I understand you needed to know that Ms McNabb would accept that
> number so you could nail things down with your client.  So we will settle for $7500, give
> a call or drop an email with news from your end.
>
> Thanks for your efforts on this matter.
>
> Tom

Pogust asserts that after receiving this e-mail, he called Powers and confirmed his representation,

and agreed to seek authority from Novartis to settle at that amount.

Page 3 - OPINION AND ORDER

Pogust includes a series of emails between August 1 and September 16, 2005. Pogust claims that these confirm that the parties agreed to a settlement. The last of those emails, from Powers on September 16, 2005, reads: "I'm dealing with Ms McNabb, getting her signature and getting the documents returned, sorry for the delay. We are going to conclude this." Pogust describes that he had at least two conversations with Powers during this period, and asserts that he confirmed with Powers that his client had agreed to execute the Settlement Agreement, and that in each conversation Powers undertook to contact McNabb and ask her to return the executed Settlement Agreement.

Pogust also includes notes from his telephone conversation of January 19, 2006 with Powers, after the Conditional Remand Order was entered in this case. The notes state that

> I got a voice-mail from Powers. ... He assured me that the motion to withdraw has nothing to do with our settlement and that he has no reason to believe that McNabb is reneging on the settlement in any way. He said he thinks its just an oversight that she did not return the Release.

Based on this documentary evidence, Novartis argues that a settlement agreement was reached in August 2005 with plaintiff's then counsel Powers.

McNabb states in her response that she is the legal representative of the estate of Betty H. Alvis, and the only party who has now or ever had authority to authorize a settlement between the estate and Novartis. She asserts that at no time did she grant Powers, nor any other person, authority to act in her stead in settlement of this matter. She also asserts that she never signed nor approved any settlement with Novartis, and that the settlement draft which Powers gave her was defective on its face and contained provisions which she did not believe to be in the best interest of the estate. Therefore she refused to sign the document and asked Powers to

Page 4 - OPINION AND ORDER

renegotiate certain issues.  According to McNabb, Powers refused to do so and therefore is no

longer employed by the estate.  McNabb alleges that she has made an effort to negotiate with

Novartis, to no avail.  McNabb argues that the Motion to Enforce Settlement Agreement should

be denied on the basis that no settlement exists nor has ever existed between the parties.

## DISCUSSION

I.    <u>Legal Standards</u>

A district court has the equitable power to enforce an agreement to settle a case pending

before it, but only if there is a complete settlement agreement.  <u>Callie v. Near</u>, 829 F.2d 888, 890

(9th Cir. 1987).  Summary enforcement of a settlement agreement on motion is inappropriate

where material facts concerning the existence or terms of a settlement are in dispute.  <u>City</u>

<u>Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co.</u>, 22 F.3d 954, 957 (9th Cir. 1994).  In those

circumstances, an evidentiary hearing must be held to resolve factual disputes.  <u>Id.</u> (citing <u>Callie</u>,

829 F.2d at 890).

As a general matter, principles of state law govern the interpretation and enforcement of

settlement agreements.  <u>Jeff D. v. Andrus</u>, 899 F.2d 753, 759 (9th Cir. 1989).  When there is a

potential conflict regarding the applicable state law in a diversity suit, the federal district court in

Oregon applies Oregon choice of law rules.  <u>See</u> <u>Patton v. Cox</u>, 276 F.3d 493, 495 (9th Cir. 2002)

(applying Arizona choice of law rules to a suit filed in the federal district court in Arizona).  If

the substantive law of the competing forums are not materially different, Oregon law will apply.

<u>Angelini v. Delaney</u>, 156 Or. App. 293, 300, 966 P.2d 223, 227 (1998).

II.    <u>Defendant Novartis Consumer Health's Motion to Enforce Settlement Agreement</u>

Novartis argues that a settlement was reached in August 2005 with Powers on behalf of McNabb.  McNabb asserts that Powers did not have authority to enter into a settlement.  The question is whether the evidence offered with the motion and response shows, as a matter of law, that a valid settlement agreement exists based on Powers's apparent authority to enter into a settlement agreement.  Although the parties have not briefed the issue, there is an antecedent question of what state's law should apply to determine whether there is a valid agreement.  Novartis relies on Oregon law of settlement agreement enforcement in its memoranda in arguing that Powers had apparent authority to bind McNabb to a settlement.  Unless there is an effective choice of law by the parties, Oregon courts would look first to whether there is a material difference between Oregon law and other potentially applicable law regarding an attorney's apparent authority to settle–in this case the law of Tennessee or New Jersey.[1]  <u>Angelini</u>, 156 Or. App. at 300, 966 P.2d at 227.  If there is no material difference, there is a "false conflict" and Oregon law applies.  <u>Id</u>.  Because it is unclear whether there is a binding agreement or an effective choice of law, and because the law of the three potentially applicable jurisdictions is consistent regarding apparent authority, I apply Oregon law to the narrow question whether there is a valid agreement based on apparent settlement authority presented in the pending motion.

––––––––––––––––––––

[1] McNabb is a resident of Tennessee.  The Novartis entities named in the Settlement Agreement (Novartis Consumer Health, Inc. and Novartis Pharmaceuticals Corporation) are incorporated under the laws of Delaware and have their principal places of business in New Jersey.  Tennessee or New Jersey law is potentially applicable based on the parties' domicile under the "most significant relationship" test.  <u>Bush v. Paragon Prop., Inc.</u>, 165 Or. App. 700, 712, 997 P.2d 882, 889 (2000) (Wollheim, J., concurring).  New Jersey law is also potentially applicable if the Settlement Agreement is binding because the agreement itself contemplates that it "is to be applied, interpreted, and construed according to the laws of the State of New Jersey."

Under Oregon law, an attorney does not have authority arising merely from his employment to settle a client's claim.  Johnson v. Tesky, 57 Or. App. 133, 136, 643 P.2d 1344, 1347 (1982).  Authority to negotiate with the opposing party does not, by itself, imply the power to enter into a binding settlement.  Id. at 136-137, 643 P.2d at 1347.  Instead, the client's express authorization is necessary.  Id. at 137, 643 P.2d at 1347. Apparent authority to settle is created when the client's conduct, reasonably interpreted–not the conduct of the attorney–causes a third party mistakenly to believe that the attorney has actual authority.[2]  Id.  Absent such conduct by the client, an attorney has only the "usual powers of an attorney in charge of litigation, i.e., to solicit a settlement offer subject to the client's approval."  Id. at 138, 643 P.2d at 1348.  Here, Novartis has not alleged any action by McNabb that Novartis reasonably interpreted to have given Powers apparent authority to settle the case.  Cf. Kaiser Foundation Health Plan of the Northwest v. Doe, 136 Or. App. 566, 573-74, 903 P.2d 375, 379-80 (1995) (holding that defendant's conduct, including actually accepting a settlement offer and communicating the acceptance through her attorney, justified plaintiff's belief that the attorney had apparent authority to accept a settlement offer).

---

[2] Tennessee law regarding apparent authority is essentially similar to Oregon's in requiring some action by the principal that leads a third party reasonably to believe that an agent has apparent authority to take an action on the principal's behalf.  Mechanic's Laundry Serv. v. Auto Glass Co. of Memphis, Inc., 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002); see also Absar v. Jones, 833 S.W.2d 86, 89 (Tenn. Ct. Ap. 1992) ("[t]he general rule ... is that an attorney cannot surrender substantive rights of a client, including agreeing to dismissal of litigation which permanently bars a client from pursuing his claim, without the express authority of the client").  New Jersey law is consistent with Oregon law in requiring some affirmative act on the part of the client that would lead a third party reasonably to believe that the attorney had apparent authority to settle, and not only to negotiate.  Amatuzzo v. Kozmuik, 305 N.J. Super. 469, 475, 703 A.2d 9, 12 (N.J. Super. Ct. App. Div. 1997).  Under New Jersey law, an attorney's words or acts alone are insufficient to cloak the attorney with apparent authority.  Id. at 476, 703 A.2d at 12.

The July 25, 2005 email from Powers to Pogust is ambiguous as to whether or not Powers had actually obtained approval from his client to enter into the settlement agreement. Powers did not expressly confirm that he had authority from McNabb, nor did he state expressly that McNabb had approved the settlement. McNabb, in her Answer to Novartis's Memorandum in Support of the Motion to Enforce Settlement Agreement, emphatically states that "[a]t no time did I grant Mr. Tom Powers, nor any other person authority to act in my stead in settlement of this matter" and "I never signed nor approved any settlement with Novartis." I accept McNabb's signed Answer as a valid declaration. Given her statement that she never approved a settlement with Novartis, the July 25, 2005 email and other evidence supplied in the Declaration do not prove as a matter of law that Powers had actual or apparent authority to bind McNabb to a settlement. Because Novartis has not shown that Powers had authority to bind McNabb, material issues of fact remain that require an evidentiary hearing.


///


///


///


///


Page 8 - OPINION AND ORDER

**CONCLUSION**

Because I find there are questions of fact as to the validity of the Settlement Agreement, I defer ruling on defendant Novartis's Motion to Enforce Settlement Agreement (#26) pending an evidentiary hearing.  The parties have been directed to confer and submit a proposed date for the evidentiary hearing.  The Declaration of Glenn Pogust (#28) is unsealed.  A decision on plaintiff's Motion to Transfer Venue (#22) is deferred pending the final resolution of the Motion to Enforce Settlement Agreement.

IT IS SO ORDERED.

DATED this __19th__ day of June, 2006.


   _/s/ Garr M. King_____
GARR M. KING
United States District Judge

Page 9 - OPINION AND ORDER